UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Elizabeth Mewborn, guardian and next friend of the minor child N.V.,** ) <br> ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **GOVERNMENT OF DISTRICT OF COLUMBIA,** ) <br> ) <br> **Defendant.** ) <br> _____ ) | Civil Action No. 03-2432 (RCL) |

**MEMORANDUM OPINION**

This matter comes before the court under the Individuals with Disabilities Act, 20 U.S.C. § 1401 et. seq. ("IDEA") on plaintiff's motion for summary judgment ("Pl. Mot.") .  Defendant filed a motion for summary judgment and opposition to plaintiff's motion for summary judgment ("Def. Mot.").  Plaintiff then filed an opposition to defendant's motion for summary judgment and a reply to defendant's opposition to plaintiff's motion for summary judgment ("Pl. Opp'n"). Defendant filed a reply to plaintiff's opposition to defendant's motion for summary judgment ("Def. Reply").  Upon consideration of the filings and the applicable law, the Court will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

**I.     Background**[1]

The plaintiff is the guardian of N.V., who was 16-year-old boy at the time this dispute arose and is eligible for special education as a result of multiple learning disabilities, including emotional disturbance and learning disabilities. (A.R. at 4, 144-63). In August, 2002, District of Columbia Public Schools ("DCPS") placed N.V. at the Pines Residential Treatment Center ("the Pines"), the most restrictive educational environment available in the DCPS system. (A.R. at 4). After determining that N.V. had made progress at the Pines, DCPS and the Pines considered moving N.V. back to a more traditional educational environment during July, 2003. (Id.) At the same time, the educators at the Pines developed for N.V. an Individualized Educational Program ("IEP"), which included an allotment of 18.25 hours per week of specialized instruction in classes like English, Math and Science, and 14.25 hours per week of general education instruction in classes like Social Skills and P.E.A.C.E. (A.R. at 4, 146). The IEP also called for group and individual counseling, recreational therapy and substance abuse counseling. (A.R. at 170-77). DCPS did not participate in the development of this IEP. (A.R. at 163).

At some point during the summer of 2003, DCPS placement specialist Sharon Woodson ("Woodson") took over responsibility for monitoring students at the Pines. (A.R. at 4). Woodson monitored these children by reviewing their progress reports; however, neither she nor anyone else from DCPS contacted N.V.'s therapist at the Pines until September, 2003. (Id.).

---

[1] Local Rule 7.1(h) provides that "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Furthermore, since this case is a review of an administrative agency's decision, the Court also relies on facts contained in the Administrative Record ("A.R."). Unless otherwise noted, the Court states only uncontroverted facts.

In September, 2003, plaintiff's counsel called Woodson regarding the need for a placement meeting and new placement for the student. (Id.) On September 15, 2003, counsel filed a due process hearing request to initiate a placement meeting. (A.R. at 26-31). Woodson received N.V.'s report card and IEP from the Pines on September 24, 2003. (Id.) Apparently due to scheduling difficulties, N.V.'s placement meeting for the student was not held until October 7, 2003. (Id.) Via telephone, Woodson convened a meeting that included the education director from the Pines, two student therapists from the Pines, N.V.'s classroom teacher at the Pines, N.V.'s guidance counselor from the Pines, plaintiff and her counsel, and Ms. Ingram ("Ingram") from the Spingarn Center ("Spingarn"). (Id.)

At the meeting, the multi-disciplinary team[2] ("MDT") discussed N.V.'s IEP, and decided that many of the student's goals and objectives remained appropriate for him. (A.R. at 5). N.V.'s behavioral assessment did not change from what was stated in his IEP. (Id.) The MDT, however, failed to discuss N.V.'s need for therapeutic services, including his potential need for substance abuse treatment and tutoring. (Id.) Though he received therapeutic services during his time at the Pines, neither the July IEP nor this October 7, 2003, meeting addressed these needs. (Id.)

The MDT then determined that N.V. would require 32 hours of specialized instruction and related services and would be in a <u>full-time</u> special education program. (Id.) This kind of instruction was not called for in N.V.'s July, 2003, IEP implemented by the Pines, which called for only part-time special education. (Id.) The IEP called for N.V. to be eased back into a traditional educational environment with both special and general education. (Id.) According to

---

[2] The participants in this telephone meeting are referred to as a multi-disciplinary team.

DCPS, this change in IEP during the October 7, 2003, meeting constituted an amendment to N.V.'s IEP. (Id.) Woodson made notes during this meeting concerning the new program for N.V. (Id.) At this point, DCPS recommended Spingarn, which has three social workers and classrooms limited at ten students with a certified special education teacher, as an appropriate location in which to carry out N.V.'s IEP. (Id.)

**II.     Applicable Law**

    **A.     Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). As with Rule 12(b)(6) motions for dismissal, facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment may still be granted, however, if evidence favoring the non-moving party is merely colorable, or is not significantly probative. Anderson, 477 U.S. at 249-50 (citations omitted). Once the moving party files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250. For a non-moving party to establish a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B.     IDEA**

IDEA "confers upon disabled students an enforceable substantive right to public education . . . and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." Honig v. John Doe, 484 U.S. 305, 310 (1988).[3] The goal of IDEA is to ensure that all children are afforded "a free and appropriate public education . . . designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).

In order to receive funds under IDEA, the Act requires school districts to adopt procedures that ensure appropriate educational placement of disabled students. See 20 U.S.C. § 1413. These plans, IEPs, must include a "statement of the child's present levels of educational performance, . . . a statement of measurable annual goals, [and] a statement of the special education and related service . . . to be provided to the child. . . ." 20 U.S.C. § 1414(d)(1)(A). An IEP requires a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section . . . ." 20 U.S.C. § 1414(d)(1)(A) (emphasis added); see Diatta v. Dist. of Columbia, 319 F.Supp. 2d 57, 63 (D.D.C. 2004). It is developed jointly by a qualified representative of the local educational agency, the child's teacher, the parents or guardian, and when appropriate, the child.

DCPS is obligated under IDEA to "[i]nsure that [its] placement decision [was] made by . . . persons knowledgeable about the child, the meaning of the evaluation data, and the placement

---

[3]Honig interprets provisions of the Education of the Handicapped Act, 20 U.S.C. § 1400 et. seq., which was reenacted in 1990 as IDEA. Law interpreting the Education of the Handicapped Act is applicable to IDEA. See Bd. Of Trustees of Univ. Of Ala. v. Garrett, 531 U.S. 356, 391 (2001).

options," 34 C.F.R. § 300.533(3), and to provide appropriate written notice to the child's parents. 20 U.S.C. § 1415(c). Such notice must include:

> A description of action proposed . . . by agency; an <u>explanation</u> of why the agency proposes . . . to take action; a <u>description</u> of any options that the agency considered and the reasons why those options were rejected; a description of <u>each</u> evaluation procedure, test, record, or report the agency used as a basis for the proposed . . . action; [and] a description of any other factors which are relevant to the agency's proposal . . . .

20 U.S.C. § 1415(c)(1)-(5); <u>see</u> <u>McKenzie v. Smith</u> 771 F.2d 1527, 1532 (D.C. Cir. 1985).

IDEA grants parents broad procedural rights to enforce the provisions of the Act. <u>See</u> <u>Honig</u>, 484 U.S. at 310. The Act guarantees parents an opportunity to participate in the "identification, evaluation, and educational placement of the child," 20 U.S.C. § 1415(h)(1), and parents who object are entitled to an "impartial due process hearing," §§ 1415(b)(6), (f)(1) at which they have a "right to be accompanied and advised by counsel." § 1415(h)(1). During the due process hearing, "[defendant] shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student." 5 D.C. Mun. Regs. § 3022.16. Any party aggrieved by the hearing officer's determination may seek judicial review of the determination in federal district court. 20 U.S.C. § 1415(i)(2)(A). The hearing officer who presides is charged with rendering a final decision on the matter. 20 U.S.C. § 1415(i)(1)(A).

    **C.**    **Standard of Review**

In reviewing administrative decisions under the IDEA, courts will review the records of the administrative proceedings, hear additional evidence at the request of the party, and make a decision based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B). In suits

brought under § 1415(e)(2), the court must apply the two-prong test set forth in Bd. of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). First, the court must determine whether the state has complied with the procedural requirements of IDEA. Id. Second, the court must determine whether the IEP developed by the school district is "reasonably calculated" to confer educational benefits on the child. Id.

The court has broad discretion to grant appropriate relief under IDEA, see Sch. Comm. of Burlington v. Mass. Dept. of Educ., 471 U.S. 359, 369 (1985), and its standard of review under IDEA is less deferential than that used in the traditional substantive evidence test in ordinary administrative review cases. See e.g. Kerkham v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Kroot v. D.C., 800 F.Supp. 976, 981 (D.D.C. 1992). However, the district court should not "substitute its own notions of sound educational policy for those of the school authorities." Rowley, 458 U.S. at 206. The court must give "due weight" to the administrative proceedings, but its decision ultimately should be an "independent [one] based on a preponderance of evidence." Id. at 206-07.

The court should review the hearing officer's decision along with additional evidence and "shall grant such relief as [it] determines is appropriate." § 1415(i)(B)(2). "Appropriate" has been interpreted broadly. Burlington, 471 U.S. at 369. In cases in which parents could not afford to pay for private schooling, this court has held that parents still have a "viable remedy" via compensatory education. Harris v. D.C., No. Civ.A. 91-1660, 1992 WL 205103, at *3 (D.D.C. 1992); Hammond v. D.C., No. Civ.A. 99-1723, 2001 WL 34360429, at *6 (D.D.C. March 1, 2001); see Hall v. Knott Co. Bd. Of Educ., 941 F.2d 402 (6th Cir. 1991); Lester H. V. Gilhool, 916 F.2d 865 (3rd Cir. 1990). The right to compensatory education accrues when the school

district knew or should have known that a disabled child was not receiving a free and appropriate education.  See Ridgewood Bd. Of Educ. v. N.E. ex rel M.E., 172 F.3d 238, 250 (3rd Cir. 1999).

**III.    Analysis**

   **A.    IEP**

The main issues in this case are whether DCPS and Woodson's notes during the October 7, 2003, meeting constitute a valid and complete IEP under IDEA, and whether a new IEP must be produced.  This court holds that Woodson's notes were inadequate under the procedural guidelines of IDEA, and that DCPS must convene a meeting to determine a new IEP and placement for N.V.

While plaintiff asserts that this case is not about "form over content," Pl. Opp'n. at 8, and defendant claims that this case "is indeed about form over content," Def. Opp'n at 2, both sides have it wrong.  This case, and all cases involving IEPs under IDEA, is about form <u>and</u> content.  The two concepts are not mutually exclusive; indeed, they work hand in hand to provide each individual student with an appropriate education under IDEA.

Though defendant argues that re-writing Woodson's notes in the correct form is duplicative and thus unnecessary, that argument fails in light of the importance Congress put on procedure under IDEA.  See 20 U.S.C. § 1415(c)(1)-(5).  The Supreme Court in <u>Rowley</u> established the importance of procedure and articulated how form and substance are part and parcel of the same goal – achieving an appropriate education for the student.  <u>Rowley</u>, 458 U.S. at 205-06.  In 20 U.S.C. § 1415(c)(1)-(5), Congress lays out several procedural safeguards for school systems to follow in providing written notice to parents when a change in a student's IEP is set to occur.

In Rowley, the Supreme Court held that the importance of these procedural safeguards "cannot be gainsaid." 485 U.S. at 205. Indeed, the underlying goals of IDEA are rooted in the procedure it mandates. See id. at 206 ("[A]dequate compliance with the procedures proscribed [will] in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP."); see also Smith v. Robinson, 468 U.S. 992 (1984) (the procedures "effect Congress' intent that each child's individual educational needs be worked out through a process that . . . includes . . . detailed procedural safeguards."). In mandating such specific procedural safeguards, Congress effectively was trying to ensure that, to the extent the procedures are followed, special-needs children will receive an appropriate education. See McKenzie at 1532.

Here, the Pines constructed an IEP for N.V. during July, 2003. A.R. at 5. However, when DCPS and the Pines decided to transfer N.V. to a less-restrictive educational atmosphere, N.V. required a different IEP, or at least an addendum or revision to his current IEP, to coincide with his new environment. See id. Whether or not Woodson created an addendum to the IEP at this point or at a later time is in dispute. See Pl. Mot., Def. Mot. However, the fact that the notes were not admitted into evidence at the October 20, 2003, hearing, see A.R. at 5, n.5, suggests that it was not in a written form that was capable of distribution to the child's parent as required under IDEA. See 20 U.S.C. § 1415(c). As a result, the notes do not constitute a valid revision to N.V.'s July, 2003, IEP because they do not comport with the strict procedural guidelines set forth under IDEA, which ensure a clear exposition of what a child's IEP will include. 20 U.S.C. § 1414(d)(4); see id.

The inadequacy of Woodson's notes becomes clear when viewed in contrast to the addendum made at Spingarn ("Spingarn addendum") on December 9, 2003. See Pl. Opp'n,

Exhibit 1.  First, the Spingarn addendum is marked as such at the top of the page, making clear to the parent exactly what the document signifies.  Id.  Second, the "services to be added to the IEP" are clearly listed in the middle of the page, so the parent knows exactly how her child will be spending time during school.  Id.  These services in the Spingarn addendum also make explicit the time for "counseling," "speech therapy," and "specialized instruction."  Id.

On the other hand, Woodson's notes, while somewhat probative of N.V.'s educational needs, are disorganized, incomplete, and at times sarcastic.  See Def. Mot., Exhibit 1, Attachment A.  Her notes do not provide for whether N.V. required counseling, dates indicating the beginning and end of the amended IEP, or specifics about the providers of the services.  Id.; see 20 U.S.C. 1414(d)(1)(A).  In addition, the notes are replete with Woodson's sarcastic comments; for example, Woodson wrote that "not surprisingly Ms. Jester [plaintiff's counsel] rejected anything DCPS had to offer. . . ."  Id. (emphasis added).  The substantive omissions and sarcastic language do not comport with IDEA, which lays out the requirements of an IEP.  See id.  While the Spingarn addendum does not appear to meet the full requirements of § 1414(d)(1)(A) either, detailed more fully infra, this court uses the Spingarn addendum to illustrate the inadequacy of Woodson's notes as proxy for an adequate addendum or revision.

      B.      **DCPS Must Create a New IEP and Placement for N.V.**

Though the IDEA does not make clear what constitutes a "written" IEP, policy considerations serve to support the importance of a written, complete IEP, or a written addendum or revision to an existing IEP.  A parent's interest in receiving full appraisal of the educational plan for her child is critical.  It allows a parent both to monitor her child's progress and determine if change to the program is necessary.  Piecemeal changes to a student's IEP, as happened here

10

with Woodson's hand-written notes in an MDT Notes form, see Def. Mot., Exhibit 1, Attachment A, do not give a parent notice of exactly what changes are to be made, by whom, when, and to what degree. Because of these deficiencies, a parent would be forced to guess at the educational goals for her child, something the procedures under IDEA strive to avoid. See 20 U.S.C. § 1414(d)(1)(A).

Because the defendant has not produced an adequate IEP to this point, it must fashion an appropriate IEP that comports with IDEA for N.V. Even though the Spingarn School filled out a new addendum meeting page, see Pl. Opp'n, Exhibit 1, it is unclear whether all of the requirements for a full and appropriate IEP have been met. Plaintiff signed the New Addendum Meeting Page, see Pl. Opp'n, Exhibit 1, suggesting that she was satisfied with its contents. However, 20 U.S.C. § 1414(d)(1)(A) requires that a "statement of the child's present levels of educational performance" and a "statement of measurable annual goals, including benchmarks or short-term objectives" are included in the IEP. 20 U.S.C. § 1414(d)(1)(A)(i-ii). Neither of these requirements is met by the Spingarn addendum, nor were these or other requirements met by the October 7, 2003, addendum or revision. The Spingarn addendum to be sure is far more specific than the October 7, 2003, meeting notes, and it meets many of the requirements for an IEP addendum set forth in IDEA. See Pl. Opp'n, Exhibit 1; 20 U.S.C. § 1414(d)(1)(A). However, because this court is not satisfied that N.V.'s IEP presently is full and complete, this court orders defendant to convene an IEP/placement meeting to develop an appropriate IEP and placement for N.V. within thirty days of this decision.

### C. The Court Does Not Reach Plaintiff's Perjury Allegation

This court does not need to reach the allegations of Woodson's perjury. Regardless of her

testimony about their existence, the October 7, 2003, notes were inadequate in any case. See supra. Assuming arguendo that Woodson's claims are true, the existence of the addendum at the time of the administrative hearing does nothing to cure the inadequacy of Woodson's notes as an addendum or revision of N.V.'s IEP. If the court did decide to reach this question, it would have to engage the parties in factfinding because of the existence of genuine issues of material fact in this matter. See Fed. R. Civ. P. 56(c). However, because the truth of Woodson's testimony does not affect the outcome in this case, the court declines to reach the allegation in its decision.

## IV. Conclusion

Because no issue as to the material facts exists, the Court finds plaintiff's motion for summary judgment shall be GRANTED and defendant's motion for summary judgment shall be DENIED. Under its broad authority to fashion equitable relief, Burlington, 471 U.S. at 369, this court further finds N.V. is entitled to a new IEP and placement meeting to be convened within thirty days of this ruling. Moreover, the plaintiff may submit an application for attorneys fees and costs in accordance with Local Rule of Civil Procedure 54.2.

A separate Order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, March 22, 2005.